2006-NMSC-029

137 P.3d 599

**Kimberly J. PAYNE, Plaintiff–Petitioner,**

v.

**Thomas HALL, M.D., and Curtis W. Boyd, M.D., a professional corporation, Defendants–Respondents.**

No. 28,823.

Supreme Court of New Mexico.

June 8, 2006.

Sanders, Bruin, Coll & Worley, P.A., Clay H. Paulos, Ian D. McKelvy Roswell, NM, for Petitioner.

Brennan & Sullivan, P.A., Michael W. Brennan, Santa Fe, NM, for Respondents.

Attwood, Malone, Turner & Sabin, P.A., Kay Cargill Jenkins, Carla Ann Neusch Williams, Roswell, NM, for Amicus Curiae, New Mexico Defense Lawyers Association.

McGinn, Carpenter, Campbell, Montoya & Love, Randi McGinn, Michael B. Browde, Albuquerque, NM, for Amicus Curiae, New Mexico Trial Lawyers Association.

## OPINION

BOSSON, Chief Justice.

{1} In the course of an elective abortion, Plaintiff Kimberly Payne twice received medical treatment she alleged to be negligent, which ultimately caused her to suffer substantial physical injuries. She was first treated by Dr. Thomas Hall of the Boyd Clinic (hereinafter collectively referred to as "the Clinic"), and subsequently at the University of New Mexico Hospital (hereinafter referred to as the "Hospital"). Plaintiff sued only the Clinic under a theory of successive tortfeasor liability, and sought compensation for alleged injuries incurred both at the Clinic and the Hospital. The jury returned a verdict of negligence but no causation on the part of the Clinic for any injury, either at the Clinic or the Hospital. On appeal, Plaintiff claims error in that, consistent with successive tortfeasor theory, the trial court should have found causation as a matter of law on the part of the Clinic for the entire extent of her injuries, including those incurred successively at the Hospital.

{2} Both the district court and the Court of Appeals held against Plaintiff on her claim of causation as a matter of law, although the appellate court could not agree on an overarching rationale. *Payne v. Hall*, 2004–NMCA–113, 136 N.M. 380, 98 P.3d 1030 (Alarid, J., specially concurring, Bustamante, J., dissenting). We granted certiorari to

help clarify the evolving state of the law regarding successive tortfeasor liability, particularly as it relates to the requirement that the victim prove a distinct injury caused by the negligence of the original tortfeasor, separate and apart from those injuries later caused by the successive tortfeasor. We agree with the Court of Appeals that the trial court did not err when it refused to decide as a matter of law that the Clinic caused any original injury separate from the injuries suffered at the Hospital. Nonetheless we reverse and remand for a new trial because the jury was not properly instructed on the theory of the case. We also attempt to resolve the questions raised in the separate opinions of the Court of Appeals and provide guidance in respect to this confusing area of the law.

## BACKGROUND

{3} In the second trimester of her pregnancy, Plaintiff went to the Clinic to obtain an abortion. Because of the advanced state of her pregnancy, the Clinic chose a procedure that requires two days. On the first day the cervix is dilated through the insertion of laminaria. On the second day, the fetus is extracted.

{4} During the laminaria insertion on the first day, Plaintiff was in some degree of pain. Plaintiff wanted to proceed despite the pain, and Dr. Hall completed the insertion. On the second day, Plaintiff's pain grew worse. Dr. Hall and members of his staff attempted to start an IV in Plaintiff's arms to administer pain medication. The attempt was unsuccessful, possibly due to Plaintiff's alleged prior intravenous drug use. The Clinic staff also attempted to obtain an anesthesiologist for the procedure, but could not. Plaintiff's pain caused her to move about on the table, forcing the doctor to stop the procedure several times.

{5} Due to the risk of infection or spontaneous abortion, Dr. Hall was too far along in the procedure to remove the laminaria and allow Plaintiff to go home. Dr. Hall advised Plaintiff that one option was to find a doctor at a hospital who would perform the procedure. Although no hospital in New Mexico takes patients directly for elective abortions, Dr. Hall informed Plaintiff that the University of New Mexico Hospital allows for exceptions, such as referral of patients with complications. Plaintiff opted to continue at the Clinic. Dr. Hall continued for some time using an intramuscular anesthesia for limited pain control, but the doctor ultimately determined he could not complete the procedure. He then contacted Dr. Jamison at the Hospital who agreed to accept Plaintiff's transfer.

{6} Under the supervision of Dr. Jamison, Dr. Maybach, a second-year resident at the Hospital, attempted to complete the abortion, but with disastrous results. Dr. Maybach entered the uterus and unknowingly extracted Plaintiff's right ureter, the tube connecting the kidney to the bladder. Continuing on, Dr. Maybach mistakenly extracted Plaintiff's right ovary. At that point, Dr. Jamison terminated the procedure and began abdominal surgery, during which the doctors realized Plaintiff's uterus had a large perforation forcing them to perform a hysterectomy. Plaintiff's kidney was later removed because of the damage caused by the removed ureter. The parties to this appeal do not dispute that Plaintiff suffered significant personal injury as a result of her treatment at the Hospital.

{7} Electing not to sue the Hospital or its doctors, Plaintiff filed a complaint solely against the Clinic.[1] Specifically, Plaintiff alleged that the Clinic negligently perforated Plaintiff's uterus, among other injuries, which in turn caused Plaintiff to be transferred to the Hospital where she suffered separate, enhanced injuries due to the Hospital's negligence. Alleging successive, divisible injuries, first at the Clinic and then at the Hospital, Plaintiff sued the Clinic under a theory of successive tortfeasor liability. As will be discussed more fully in this opinion, under successive tortfeasor theory the Clinic could be held jointly and severally liable for both: any original injury caused at the Clinic, and the enhancement of those injuries by separate acts of negligence at the Hospital.[2]

---

1. Plaintiff's counsel stated that the Hospital and its doctors were not sued because Plaintiff felt grateful to the Hospital for saving her life and that suing them would be wrong.

2. Recognizing that Plaintiff was pursuing a theory that would hold the Clinic liable for both the injuries caused by the Clinic and by the Hospital, the Clinic filed a third-party complaint seeking

For its part, the Clinic denied any negligence or that it caused Plaintiff any injury. The Clinic blamed the Hospital for substantially all of Plaintiff's injuries.

{8} At the close of all the evidence, the district court agreed that Plaintiff had presented a case for successive tortfeasor liability. Based on this Court's prior discussion of successive tortfeasor liability in *Lujan v. Healthsouth Rehabilitation Corp.*, 120 N.M. 422, 426, 902 P.2d 1025, 1029 (1995), the jury was instructed that: "When a person causes an injury to another which requires medical treatment, it is foreseeable that the treatment, whether provided properly or negligently, will cause additional harm. Therefore, the person causing the original injury is also liable for the additional injury caused by subsequent medical treatment, if any." At Plaintiff's request, the jury was also instructed on five possible theories of negligence by the Clinic: (1) that the Clinic was not adequately equipped to perform this type of abortion; (2) the Clinic did not obtain an anesthesiologist; (3) the Clinic did not obtain IV access; (4) the Clinic did not stop the procedure when Plaintiff was in pain, and; (5) Dr. Hall did not accurately relay the patient's medical history to the Hospital.

{9} On Plaintiff's request, the jury also received an instruction that Plaintiff had the burden of proving that the Clinic's negligence was a proximate cause of Plaintiff's injuries and damages, as well as an instruction defining proximate cause.[3] At Plaintiff's suggestion, the jury was given a special verdict form asking it to decide whether the Clinic was negligent, and if so, to determine if that negligence was a proximate cause of Plaintiff's injuries and damages. Along with Plaintiff's instructions, the district court permitted the Clinic to submit to the jury its defense theory that Plaintiff's injuries were caused solely by the Hospital and not by anything that occurred at the Clinic.

{10} After being instructed, the jury returned a special verdict finding that the Clinic was negligent but not a proximate cause of Plaintiff's injuries and damages. Plaintiff then filed a motion for judgment as a matter of law (JNOV) and a motion for new trial, asking the district court to find proximate cause as a matter of law. The district court denied Plaintiff's motions, and the Court of Appeals affirmed the district court in a split decision. *Payne*, 2004–NMCA–113, 136 N.M. 380, 98 P.3d 1030 (Alarid, J., specially concurring, Bustamante, J., dissenting). We granted certiorari to address successive tortfeasor liability, a subject that has been called the "most intractable problem created by New Mexico's adoption of several liability." M.E. Occhialino, *Bartlett Revisited: New Mexico Tort Law Twenty Years After the Abolition of Joint and Several Liability—Part One*, 33 N.M. L.REV. 1, 20 (2003).

## DISCUSSION

### Successive Tortfeasor Liability Arises from Separate and Causally–Distinct Injuries Caused by the Original Tortfeasor

{11} In New Mexico, when concurrent tortfeasors negligently cause a single, *indivisible* injury, the general rule is that each tortfeasor is severally responsible for its own percentage of comparative fault for that injury. *See* NMSA 1978, § 41–3A–1(A) (1987); *Bartlett v. N.M. Welding Supply, Inc.*, 98 N.M. 152, 158, 646 P.2d 579, 585 (Ct.App.1982), *superseded in part on other grounds by* § 41–3A–1. Under several liability, fault is compared among concurrent tortfeasors, limiting the liability of each to the dollar amount that is "equal to the ratio" of each concurrent tortfeasor's comparative responsibility for the single, indivisible injury.

---

indemnification from the Hospital. The third-party complaint was dismissed for failure to comply with the two-year statute of limitations that applied to the Hospital under the New Mexico Tort Claims Act. NMSA 1978, § 41–4–15(A) (1977). That issue has not been appealed to this Court.

**3.** Since the time of trial, the Uniform Jury Instruction on causation has been modified to remove the legal term "proximate cause." UJI 13–305 NMRA 2006. Instead the instruction is now simply titled "causation." The new instruction labels a "cause" as "[a]n act or omission [that] ... if unbroken by an independent intervening cause ... contributes to bringing about the injury." *Id.* This is modified from the prior instruction that read, "[a] proximate cause of an injury is that which in a natural and continuous sequence ... produces the injury, and without which the injury would not have occurred." UJI 13–305 NMRA 2004.

*See* § 41–3A–1(B). While several liability is the majority rule, however, certain narrow exceptions still allow for joint and several liability. *See* § 41–3A–1(C). Under the theory of joint and several liability, each tortfeasor is liable for the entire injury, regardless of proportional fault, leaving it to the defendants to sort out among themselves individual responsibility based on theories of proportional indemnification or contribution. *See* NMSA 1978, § 41–3–2 (1987) (joint and several liability produces a right of contribution); *In re Consol. Vista Hills Retaining Wall Litig.*, 119 N.M. 542, 552–53, 893 P.2d 438, 448–49 (1995) (adopting proportional indemnification "only when contribution or some other form of proration of fault among tortfeasors is not available").

{12} Whereas comparative fault and several liability apply when concurrent tortfeasors cause a single, indivisible injury, our analysis shifts when successive tortfeasors cause separate *divisible* injuries. Under successive tortfeasor liability, a first injury is caused by an original tortfeasor. That injury then causally leads to a second distinct injury, or a distinct enhancement of the first injury, caused by a successive tortfeasor (hereafter distinguished as the "second injury" or the "enhanced injury"). *See Lujan*, 120 N.M. at 426, 902 P.2d at 1029; Occhialino, *supra*, 20.

{13} As an exception to the general rule of several liability, the successive tortfeasor doctrine imposes joint and several liability on the original tortfeasor for the full extent of both injuries, those caused by both the original tortfeasor and the successive tortfeasor. *Lujan*, 120 N.M. at 426, 902 P.2d at 1029. The original tortfeasor is responsible for both injuries because it is foreseeable as a matter of law that the original injury, such as that suffered from a car accident, may lead to a causally-distinct additional injury, such as when the original injury requires subsequent medical treatment, negligently administered at a hospital. *Id.* The successive tortfeasor is only responsible for the second injury or for the distinct enhancement of the first injury. *See Lewis ex rel. Lewis v. Samson*, 2001–NMSC–035, ¶ 34, 131 N.M. 317, 35 P.3d 972 (*Lewis II* ).

{14} Importantly, because successive tortfeasor liability is an exception to the general rule of several liability among concurrent tortfeasors, the doctrine is limited to a "narrow class of cases," in which a plaintiff can show more than one distinct injury successively caused by more than one tortfeasor. *Lewis II*, 2001–NMSC–035, ¶ 32, 131 N.M. 317, 35 P.3d 972; *see also Lujan*, 120 N.M. at 425–26, 902 P.2d at 1028–29. *See generally* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 26 (2000); RESTATEMENT (SECOND) OF TORTS § 457 (1965). As a condition to obtaining joint and several liability of the original tortfeasor for both injuries, a plaintiff must show that "the original injury and the subsequent enhancement of that injury [are] *separate and causally-distinct injuries." Lujan*, 120 N.M. at 426, 902 P.2d at 1028 (emphasis added). If these elements cannot be shown, then joint and several liability does not obtain.

{15} The limiting requirement of causally-distinct injuries can be traced back to early discussions of successive tortfeasor liability in New Mexico. *See* Occhialino, *supra*, 20–23. Prior to New Mexico's adoption of several liability and comparative fault, our caselaw consistently distinguished between successive and concurrent tortfeasors, noting that successive tortfeasor liability involved negligent acts that are not concurrent, "but one succeeds the other by an appreciable interval." *Id.* at 21 (citing *Lucero v. Harshey*, 50 N.M. 1, 5, 165 P.2d 587, 589 (1946)). This temporal distinction between the negligent acts was later dropped in favor of a distinction based on an original injury followed by a successive, enhanced injury. The key to the distinction is that the original injury is caused by the negligence of the original tortfeasor, which is then followed by a second or enhanced injury caused by the second tortfeasor. *Id.* at 21–25. This Court has consistently held, even after the passage of the Several Liability Act in 1987, that for successive tortfeasor liability to apply, two distinct injuries must exist. *Id.* at 23–28; *Lewis II*, 2001–NMSC–035, ¶ 32, 131 N.M. 317, 35 P.3d 972; *Lujan*, 120 N.M. at 426–27, 902 P.2d at 1029–30. Thus, under the law of

this state only when these elements are found—negligence, causation, and a distinct original injury—may the original tortfeasor be held jointly and severally responsible for the subsequent or enhanced injury as well. See Lujan, 120 N.M. at 426, 902 P.2d at 1029; see also RESTATEMENT (SECOND) OF TORTS, supra, § 457 cmt. a (stating plaintiff must show the original tortfeasor's negligence was the "legal cause of bodily harm for which, even if nothing more were suffered, the other could recover damages").

## Successive Tortfeasor Liability does not Apply here as Plaintiff Never Proved a Separate and Distinct Injury Caused by the Negligence of the Clinic

{16} Plaintiff asserted at trial that her claim fit comfortably into a theory of successive tortfeasor liability. She argued that her original injuries at the Clinic included the perforation of her uterus, internal bleeding, and pain and suffering, all distinctly caused by the Clinic's negligence. Plaintiff then argued that a second, distinct injury occurred at the Hospital when Dr. Jamison and Dr. Maybach attempted to complete the abortion, and negligently caused Plaintiff to lose her ureter, undergo a hysterectomy, and eventually lose her kidney. Under a theory of successive tortfeasor liability, we agree that the Clinic, if it were a proximate cause of a causally-distinct original injury, such as a perforated uterus, internal bleeding, or pain and suffering, would then become jointly and severally liable as a matter of law for subsequent injuries suffered at the Hospital.

{17} However, anticipating its potential liability for all of Plaintiff's injuries, the Clinic argued at trial that it was not negligent at all, or in the alternative, that its negligence did not cause a separate, discrete original injury at the Clinic. In other words, the Clinic presented evidence that it caused no separate injury to Plaintiff, but that all injuries resulted at the Hospital, for which the Clinic was not jointly and severally liable because successive tortfeasor liability did not apply.

{18} Thus, we arrive at the heart of our problem. According to Plaintiff, once the trial court determined that this case

properly called for successive tortfeasor liability and the jury found the Clinic negligent, then as with Lujan the trial court should have found the Clinic's negligence a proximate cause as a matter of law for all the injuries subsequently suffered at the Hospital. Consistent with that theory, Plaintiff urges this Court to find proximate cause as a matter of law and reverse the jury's verdict in the Clinic's favor. Unfortunately for Plaintiff, her argument misapprehends the essence of successive tortfeasor liability.

{19} Plaintiff met part of her burden by proving negligence, but failed to show the Clinic's negligence caused any distinct injury. We cannot agree that proximate cause of the original injury (if contested) should be decided as a matter of law by the trial judge. When the claim is brought against the original tortfeasor, it is up to the plaintiff to prove, and the jury to decide, whether the plaintiff suffered a distinct original injury caused by the original tortfeasor's negligence. Causation for the second injury is determined as a matter of law, but if, and only if, the plaintiff satisfactorily demonstrates that the original tortfeasor negligently caused a distinct, original injury requiring medical treatment. See Lujan, 120 N.M. at 426, 902 P.2d at 1029 ("When a person causes an injury to another which requires medical treatment, it is foreseeable that the treatment, whether provided properly or negligently, will cause additional harm."). This original injury must be distinct from the enhanced injury that occurs subsequently at the hands of the successive tortfeasor. Here the existence of an original injury and causation of that injury were in dispute at trial, and it was for the jury, not the judge, to determine existence and causation of any alleged original injury.

{20} The requirement of an original injury was more apparent in this Court's two prior opinions dealing with successive tortfeasor theory, Lujan and Lewis II. While both opinions involved actions against the successive tortfeasor, liability of the original tortfeasor was clearer than in the present case, because both existence of, and causation for, the original injury was patent. In Lujan, the original tortfeasor collided with a motorcycle driven

by the victim, breaking his leg. 120 N.M. at 423, 902 P.2d at 1026. Then, the leg was refractured during treatment at a rehabilitation center. *Id.* at 424, 902 P.2d at 1027. The negligence of the driver of the car in the original accident caused a distinct original injury, the broken leg, which led to a distinct second injury, the refracture. Successive tortfeasor liability clearly applied, and if the claim had been brought against the original tortfeasor, the negligent driver would have been found jointly and severally liable for all injuries subsequently occurring.

{21} In *Lewis II*, 2001–NMSC–035, ¶ 2, 131 N.M. 317, 35 P.3d 972, the victim was stabbed multiple times by a criminal assailant, the original tortfeasor, and later died at a hospital allegedly due to medical malpractice. The jury found the hospital was not negligent, and thus not a successive tortfeasor, based in part on the hospital's argument that the original tortfeasor, the assailant, was the sole cause of the death; in essence that the victim would have died regardless of what subsequently happened at the hospital. *Id.* ¶¶ 2–4. The victim failed to prove that the successive tortfeasor (the hospital) caused any enhanced injury.

{22} In both *Lewis II* and *Lujan*, unlike the present case with the Clinic, there was no question that the original tortfeasor's negligence caused a distinct original injury. While neither case dealt specifically with the responsibility of the original tortfeasor, in both cases, had an action been brought against the original tortfeasor, he would have been liable jointly and severally for both the original and successive injuries.

{23} Contrary to the original tortfeasors in *Lujan* and *Lewis II*, the facts surrounding any alleged injury at the Clinic were very much in dispute, and it was up to Plaintiff to prove a distinct original injury caused by the Clinic's negligence, separate and apart from the injuries later suffered at the Hospital, before the Clinic could be held jointly and severally liable for all subsequent injuries. Based on the evidence presented at trial, the jury found that Plaintiff did not meet her burden when it found no causation. And the jury's decision had substantial support in the evidentiary record.

{24} During Plaintiff's trial, the evidence was disputed as to whether the Clinic caused any separate injury, and substantial evidence suggested that the entire extent of Plaintiff's injuries was caused by the Hospital alone. The injuries Plaintiff claimed were caused by the Clinic, uterine perforation, internal bleeding, or pain and suffering, did not necessarily occur at the Clinic. Evidence showed that Plaintiff was stable at the time she arrived at the Hospital with normal vital signs, and her initial examination by Hospital staff did not reveal any evidence of acute abdominal problems, uterine perforation or internal bleeding.

{25} Similarly, the evidence at trial was in dispute as to whether Plaintiff's theories of the Clinic's negligence were linked to any distinct injury occurring at the Clinic. For example, evidence suggested that even if the Clinic did cause uterine perforation, such a complication is not uncommon in late-term abortion procedures and not necessarily the result of negligence. Evidence also suggested that these kinds of procedures are inherently painful, and not necessarily the result of any negligence on the part of the treating physician. Plaintiff presented contrary evidence to be sure, but assuming the Clinic's view of the evidence, the jury could reasonably have concluded that the Clinic's negligence, under one of Plaintiff's proffered theories, did not cause any separate injury, distinct from what occurred subsequently at the Hospital.

## Negligence Without Injury does not Qualify for Successive Tortfeasor Liability

{26} Plaintiff further argues that even if there is not a distinct injury, a causal chain of events connects the negligence of the Clinic to the successive injury at the Hospital, and thus successive tortfeasor liability applies. Specifically, she argues that the medical complications at the Clinic necessarily caused her to be transferred to the Hospital. We note it is uncontested that the Hospital would not have taken Plaintiff as a patient had she not been referred from the Clinic, because as a matter of policy the Hospital did not accept patients for abortion proce-

dures. Therefore, Plaintiff asserts there is an indisputable causal relationship between what happened at the Clinic and whatever ultimately happened at the Hospital, because without the Clinic there would have been no Hospital. Based on that empirical and logical connection, Plaintiff concludes that the trial court erred in not finding proximate cause as a matter of law.

{27} We agree that had Plaintiff not sought treatment at the Clinic, regardless of whether the Clinic caused a distinct injury, Plaintiff would not have been subjected to medical care at the Hospital. This is not unlike a car accident victim who, although apparently uninjured, goes to the hospital for a precautionary checkup and is injured by a doctor's malpractice. *See Payne*, 2004–NMCA–113, ¶¶ 39–40, 136 N.M. 380, 98 P.3d 1030 (Alarid, J., specially concurring). In such a hypothetical, the negligent driver can be said to be "as much a proximate cause of [the Plaintiff's] exposure to [the negligent doctor] as in the classic *Lujan* scenario." *Id.* ¶ 41. It is suggested that this causal connection is enough to fall under the successive tortfeasor theory, and that plaintiff need not prove the original tortfeasor caused a distinct injury separate, from the injury caused by "the *combined* negligence of D1 and D2." *Id.* (emphasis added).

{28} This brings us to an important point. There are many scenarios in which. a defendant's negligence does not cause a separate injury, but may lead the victim to seek medical care, and in that case the defendant's negligence would be a contributing factor to the injury resulting from subsequent medical treatment. However, this argument does not meet the standard for successive tortfeasor liability. While there may be a kind of temporal connection, or a kind of causation in fact, successive tortfeasor liability applies only when an original *injury* causes subsequent medical treatment, because it is that *separate injury* which makes subsequent medical treatment foreseeable as a matter of law. *See id.* ¶¶ 39–40. Without a separate original injury, there is but one injury caused by the combined negligence of two tortfeasors. *Id.* ¶ 41. This would be a classic comparative negligence case arising from concur-

rent tortfeasors who together produce one, indivisible injury. The victim can always sue the parties severally as concurrent tortfeasors and claim comparative fault for a single, indivisible injury. This is not, however, a situation in which to claim joint and several liability under a theory of successive tortfeasors. To that extent, we respectfully disagree with any contrary view offered in Judge Alarid's thoughtful concurring opinion. *Id.* ¶¶ 35–48.

[13] {29} We reiterate that successive tortfeasor liability is a narrow theory, and must remain so because it allows joint and several liability for all injuries, rather than following the majority rule in New Mexico of several, proportional liability. *See Lewis II*, 2001–NMSC–035, ¶ 32, 131 N.M. 317, 35 P.3d 972; *Lujan*, 120 N.M. at 425–26, 902 P.2d at 1028–29. To ensure that successive tortfeasor liability continues to be applied appropriately, the parties must prove all the elements, including an original injury caused by the original tortfeasor's negligence. Merely alleging a causal connection between two alleged tortfeasors who cause a single, indivisible injury does not meet this requirement.

{30} While we require two causally-distinct injuries to qualify under successive tortfeasor theory, we emphasize that the original injury caused by the original tortfeasor's negligence need not be as obvious as the original injury in *Lujan*, a broken leg, or in *Lewis II*, eight stab wounds. For example, New Mexico law allows damages for pain and suffering. *See* UJI 13–1807 NMRA 2006. Depending on the specific facts and circumstances of a given case, this form of injury might constitute the distinct original injury necessary under successive tortfeasor liability, as long as we can decide it was foreseeable as a matter of law that medical treatment would be sought, consistent with *Lujan*, 120 N.M. at 426, 902 P.2d at 1029.

**The Jury Instructions at Trial**

{31} While we do not agree with Plaintiff's argument that proximate cause of the *original* injury should have been determined as a matter of law, we must still ascertain if the jury understood, based on the instructions it was given, how to decide the

essential issues of a case involving successive tortfeasor liability and its consequences. Plaintiff argues the jury did not understand, but was hopelessly confused by the instructions. Specifically, Plaintiff asserts that the instructions on negligence and causation were misleading in suggesting that the Clinic and the Hospital's causation for the injuries could be compared, and thus that there could be only one proximate cause for all of Plaintiff's injuries. Plaintiff argues that this forced the jury to choose between, or compare, the Clinic and the Hospital, which of course is directly contrary to successive tortfeasor theory and joint and several liability.

{32} The jury was instructed on successive tortfeasor liability. Instruction 14, using the language of this Court in *Lujan*, stated, "When a person causes an injury to another which requires medical treatment, it is foreseeable that the treatment, whether provided properly or negligently, will cause additional harm. Therefore, the person causing the original injury is also liable for the additional injury caused by the subsequent medical treatment, if any." This instruction properly set forth successive tortfeasor liability. However, it was coupled with other instructions that appeared to contradict the basic tenets of this form of liability. *Cf. Vigil v. Miners Colfax Med. Ctr.*, 117 N.M. 665, 670, 875 P.2d 1096, 1101 (Ct.App.1994) (citing *Kirk Co. v. Ashcraft*, 101 N.M. 462, 466, 684 P.2d 1127, 1131 (1984)) (jury instructions are not sufficient if, when read in their entirety, they do not "fairly present the issues and the applicable law").

{33} As we will explain, the jury was asked about the causation of injuries considered as a whole, but was never asked the critical question about causation of a separate, original injury at the Clinic. Instruction 4, based on the Clinic's theory of the case, advised the jury that, "Dr. Hall also contends that [Plaintiff's] *injuries* were caused by the acts or omissions of employees or agents of the University of New Mexico Hospital, and/or the negligence of [Plaintiff]." (Emphasis added.)[4] Instruction 4 also included language that placed the burden on Plaintiff to show that the Clinic's negligence "was a proximate cause of the *injuries and damages.*" (Emphasis added.) Then Instruction 13 defined proximate cause without differentiating between the original injury and the successive injury. UJI 13–305 NMRA 2004; *see supra* note 3.

{34} As emphasized throughout this opinion, the critical question for the jury to decide was whether the Clinic's negligence caused a discrete injury, separate from injuries inflicted at the Hospital. The jury was never asked that question. Instead, based on generic negligence jury instructions, it was asked about causation of Plaintiff's "injuries," possibly all of them considered together, without differentiating between what the Clinic's negligence caused and what the Hospital's negligence caused. *See Const. Contracting & Mgmt., Inc. v. McConnell*, 112 N.M. 371, 374–79, 815 P.2d 1161, 1165–69 (1991) (granting a new trial because the instructions confused the jury on what question it was being asked to determine and what damages it could award).

{35} As in *McConnell*, the jury was given instructions that were particularly likely to confuse the jury. *See also State v. Benally*, 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (in a criminal case "[a] juror may suffer from confusion ... despite the fact that the juror considers the instruction straightforward ... [if the] instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law"). Based on the given instructions, the jury could well have concluded that it had to determine whether the Clinic's negligence caused *all* the injuries, both those occurring

---

**4.** Plaintiff argues in part that the requested instruction allowed the Clinic to introduce evidence of comparative fault. Under the law of this state, the alleged original tortfeasor may argue that another tortfeasor caused the original injury; in other words, that the original tortfeasor's negligence did not cause an original distinct injury. *Cf. Lewis II*, 2001–NMSC–035, ¶ 35, 131 N.M. 317, 35 P.3d 972. Such an argument is not comparative fault but a basic proximate cause defense. However, we wish to make clear that the original tortfeasor can never assert that it was not at fault for the successive injury. If the original tortfeasor causes a distinct original injury requiring medical treatment, then it is also the cause, as a matter of law, for the successive injury.

at the Clinic and those occurring at the Hospital. The jury was never asked the critical question: whether the Clinic's negligence caused a separate injury, causally-distinct from those occurring at the hands of the Hospital.

{36} In sum, the jury was asked the wrong question, causation for "injuries" as a whole, and never asked the right question, causation for an "original injury." For that reason, we lack confidence in the jury's verdict, especially when it found negligence but no causation for any of Plaintiff's injuries. While we acknowledge there was sufficient evidence for the jury's outcome, we cannot be sure that the jury was addressing the pivotal and determinative issue of the case.

{37} We are also aware that some of the confusing instructions were offered by Plaintiff, and it is not our practice to grant a new trial if the original error was the fault of the complaining party. *See McConnell,* 112 N.M. at 375 n. 3, 815 P.2d at 1166 n. 3. However, the circumstances of this case present us with a unique challenge. At the time of trial, there were no Uniform Jury Instructions on successive tortfeasor theory, and in fact there was very little caselaw on the subject. *Lujan,* 120 N.M. 422, 902 P.2d 1025; *Lewis I,* 1999–NMCA–145, 128 N.M. 269, 992 P.2d 282. Importantly, none of that caselaw dealt with claims against the original tortfeasor, but rather dealt only with claims against the successive tortfeasor. Also, the law at the time was in flux because *Lewis II* had not yet been decided, leaving *Lewis I* as the applicable law.

{38} These circumstances, along with complicated facts and application of a complex area of law, make this case something of an aberration. We should not penalize any party for not anticipating future developments in the law, including law set forth years later in this opinion. For these reasons we are compelled to remand for a new trial on the merits.

**Guidance on Successive Tortfeasor Theory**

{39} In an attempt to avoid future mistakes, we take this opportunity to provide our courts with guidance regarding how successive tortfeasor cases should be tried.[5]

{40} Initially, the trial court should attempt to determine whether the case potentially involves successive tortfeasor liability. Here, at the close of the evidence the trial judge concluded that the case did involve successive tortfeasor theory because it looked like there were two causally-distinct injuries. Because the existence of two causally-distinct injuries was in dispute, the judge could not make this determination before presentation of all the evidence. This ruling was based on *Lewis I.*

{41} In *Lewis I,* our Court of Appeals concluded that successive tortfeasor liability could be, but did not have to be, determined as a matter of law prior to or after hearing all the evidence.[6] *Lewis I,* 1999–NMCA–145, ¶¶ 38, 41, 55, 128 N.M. 269, 992 P.2d 282. The Court stated that if the trial court could determine before hearing the evidence that the case involved successive tortfeasor liability, then the parties should be informed not to argue comparative fault. In order to avoid tainting a successive tortfeasor case, the Court of Appeals concluded that even if the judge could not make this determination prior or to hearing evidence, the trial judge should inform both sides not to argue comparative fault.

> If the evidence is adduced during trial to permit the trial court to make such a determination one way or the other (concurrent tortfeasor liability versus successive tortfeasor liability) as a matter of law, the trial court should submit the appropriate instructions to the jury on the proper ... theory founded on the evidence presented and permit counsel to argue the evidence

5. We note that we are not attempting to preempt our Committee on Uniform Jury Instructions–Civil, whose job it is to recommend jury instructions for this Court's review and adoption. Our discussion of jury instructions here is intended as guidance to that Committee.

6. Contrary to our suggestion in *Lewis II,* the Court of Appeals did not hold that the issue *had* to be determined as a matter of law. *See Lewis II,* 2001–NMSC–035, ¶ 31, 131 N.M. 317, 35 P.3d 972.

and applicable liability theory accordingly during closing arguments.

*Id.* ¶ 55.

{42} We agree with this assessment in part. If the existence of a causally-distinct injury is undisputed, then the trial court can determine, as a matter of law, that successive tortfeasor theory applies. Such may well be the case when a plaintiff brings a claim against only the successive tortfeasor, as in *Lujan* and *Lewis II*. But if the claim is asserted against the original tortfeasor and causation of an original injury is contested, then it would not be appropriate for the trial judge to make this determination in place of the jury.

{43} As was the case here, when the existence of causally-distinct, divisible injuries is not clear, then the question should be given to the jury to decide. Such a situation may add a certain amount of complexity to such cases. During trial, the parties may have to deal with the possibility that, ultimately, successive tortfeasor theory may not apply at all, depending on how the jury answers certain questions regarding injury and causation. Ultimately, the case may be decided on the basis of several liability and comparative fault among concurrent tortfeasors, as opposed to joint and several liability among successive tortfeasors. Or, the jury may be given a choice of theories to apply, depending on how it answers certain interrogatories. When the evidence is unclear, factual questions are best left to the jury, subject to appropriate instruction from the court.

{44} More to the point in a case such as this one, at the close of evidence the jury may have to be presented with alternative sets of jury instructions, one for concurrent tortfeasors causing a single, indivisible injury, and a second for successive tortfeasors causing separate injuries. Which theory applies will depend on the jury's answers to factual interrogatories regarding negligence, injury, and causation of a distinct original injury.

{45} The jury should be asked whether defendant was negligent. *See* UJI 13–1601 NMRA 2006 (general negligence definition); UJI 13–1101 NMRA 2006 (medical negligence definition). If so, the jury should be asked whether the evidence demonstrated causally-distinct injuries, rather than a single, indivisible injury caused by the concurrent actions of two individuals. If the jury finds separate, causally-distinct injuries, it will be instructed to proceed under successive tortfeasor liability. If the jury finds a single, indivisible injury, it will proceed under concurrent tortfeasor liability, based upon principles of comparative fault.

{46} Under successive tortfeasor theory, the jury should then be asked whether the original tortfeasor's negligence caused plaintiff's distinct, original injury. If this question is answered in the negative, then plaintiff's claim will be a nullity. But if answered in the affirmative, the plaintiff has met the burden of a successive tortfeasor liability case. If the claim is against the original tortfeasor, the defendant is then jointly and severally liable for both the original and the successive injury.[7]

{47} The trial court's successive tortfeasor instruction, utilizing the language of this Court in *Lujan,* will then be appropriate: "When a person causes an injury to another which requires medical treatment, it is foreseeable that the treatment, whether provided properly or negligently, will cause additional harm. Therefore, the person causing the original injury is also liable for the additional injury caused by subsequent medical treatment, if any." Similar language may be used in future successive tortfeasor cases. *See also* Judicial Council of California Jury Instruction 3929, 2006 Edition (California successive tortfeasor instructions); Ronald W. Eades, JURY INSTRUCTIONS ON DAMAGES IN TORT ACTIONS §§ 4.19, 4.20 (2003) (examples of instructions on negligent medical treatment).[8]

---

7.   If the claim is against the successive tortfeasor, after finding the tortfeasor's negligence caused the successive injury, the jury must then determine what the degree of enhancement was by examining the injuries that would have occurred absent the negligence. *Lewis II,* 2001–NMSC–035, ¶ 34, 131 N.M. 317, 35 P.3d 972.

8.   The California jury instruction regarding subsequent medical treatments states: "If you decide

### Cases Involving Both Successive and Concurrent Theories

 {48} The final issue we address is how to instruct and guide the jury in cases, such as this one, where there are both negligence theories: successive tortfeasor liability and comparative fault. Here, one of Plaintiff's negligence theories was that the Clinic did not properly relay Plaintiff's medical history to the Hospital. This theory cannot support a successive tortfeasor claim because it does not indicate a distinct injury at the Clinic followed by a successive injury at the Hospital. Thus, this negligence theory more properly asserts a concurrent liability claim: comparative fault among concurrent tortfeasors causing a single injury at the Hospital.

{49} When the plaintiff is asserting claims that fall under both theories, it will be up to counsel, under review of the trial judge, to divide the claims appropriately and present them to the jury under the proper theory. For example, two of Plaintiff's claims asserted that the Clinic was negligent in not administering an IV and in not responding properly to Plaintiff's pain. Both of these theories should be presented to the jury with the above instructions for determining whether they fall under successive tortfeasor liability. Then separately, Plaintiff can present the claim regarding the Clinic's failure to properly relay the Plaintiff's medical history, followed by instructions on comparative fault and concurrent tortfeasor liability.

{50} The claims should not be grouped together as was done here. Doing so makes it more confusing to a jury that is attempting to determine whether two causally-distinct injuries have been proven. Thus, dividing each claim and presenting it under the correct theory is the appropriate way to approach multiple claim cases.

### CONCLUSION

{51} For the foregoing reasons, we reverse the opinion of the Court of Appeals. We remand the case for a new trial consistent with this opinion.

{52} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, PETRA JIMINEZ MAES, EDWARD L. CHÁVEZ, Justices, and JONATHAN B. SUTIN, Judge (sitting by designation).

that [*name of defendant*] is legally responsible for [*name of plaintiffs*]'s harm, [he/she/it] is also responsible for any additional harm resulting from the acts of others in providing aid that [*name of plaintiff*]'s injury reasonably required, even if those acts were negligently performed."