This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37335

**COLE SITTON and TERRI SITTON,**

      Plaintiffs-Appellants,

v.

**SOUTHWESTERN PUBLIC SERVICE COMPANY and ERIC COPPINGER,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

Underwood Law Firm, P.C.
Kelly Utsinger
Amarillo, TX

Sommer, Udall, Hardwick & Jones P.A.
Cullen Hallmark
Santa Fe, NM

for Appellants

Davis Graham & Stubbs LLP
Michiko A. Brown
Jacqueline V. Roeder
Denver, CO

Montgomery & Andrews, P.A.
Michael R. Heitz
Timothy L. Garcia
Santa Fe, NM

for Appellees

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}**    Plaintiffs Cole Sitton and Terri Sitton appeal from the district court's final judgment, wherein the district court, following a bench trial, found in favor of Defendants Southwestern Public Service Company (SPS) and Eric Coppinger and dismissed Plaintiffs' complaint with prejudice. Plaintiffs raise a number of issues on appeal. For the reasons that follow, we affirm.

**BACKGROUND**

**I.    Factual Background**

**{2}**    The following factual background is taken from the unchallenged findings of fact made by the district court, which are binding in this appeal. *See Robey v. Parnell*, 2017-NMCA-038, ¶ 22, 392 P.3d 642 ("An unchallenged finding of the [district] court is binding on appeal." (internal quotation marks and citation omitted)).

**{3}**    SPS is a public utility that provides electrical services in several states, including New Mexico. SPS contracted with Plaska, a Texas limited liability company and Cole's employer, for construction and maintenance of an electric transmission line in Lea County, New Mexico, including the Bopco Switch. Construction at the Bopco Switch included building the switch pole, hanging insulating bells, and building a fence around the switch. It is undisputed that Cole was struck by at least one insulating bell on the left side of his hardhat, left side of his neck, and his left shoulder during the process of hanging the insulating bells at the Bopco Switch (the Bell Incident).

**{4}**    On the day of the Bell Incident, Cole was helping his Plaska colleagues, Chris Campbell and Matt Jones,[1] tie a medium-length string of eleven insulating bells to the railing of a bucket truck as Plaska had trained its employees to do. Cole and Campbell were standing on the ground and lifting up the bells to tie them to the railing of the bucket; Campbell tied the bells while Cole held them. After Campbell tied the bells, he let them go. Because Campbell left too much slack in the rope, some of the bells slipped from their tie into the slack when Cole let go of the bells and turned to walk away. This slippage resulted in at least one of the insulating bells striking or grazing the left side of Cole's hardhat, the left side of his neck, and his shoulder. After striking or grazing Cole, the bells did not fall to the ground and instead were hanging from the rope attached to the bucket.

**{5}**    Cole was stunned by the impact of the insulating bells; however, his hardhat was not cracked or knocked from his head. Cole helped Campbell reload the string of insulating bells onto the bucket railing using the same tie-off method they had just used. Cole then continued to work for the rest of the day, performing such tasks as unloading and carrying cattle panel, pipe, and eighty-pound bags of concrete. Although the exact

---

[1] Jones's role in the Bell Incident, if any, is unclear from the testimony presented at trial. Further, the district court did not enter any findings of fact that addressed any role Jones played.

day the Bell Incident occurred was disputed, the daily job briefing log for January 16, 2014, reflected that Plaska's crew planned to hang the insulating bells that day and listed tools necessary to complete the bell work as tools needed for the day.

**{6}** Cole continued to work for the two days that followed the Bell Incident, performing manual labor including running a digger truck, carrying fifty- to seventy-five-pound "X" braces and knee braces, and carrying more eighty-pound bags of concrete. After a full day of work on January 18, 2014, Cole and his colleagues went to dinner and the casino in Hobbs, New Mexico. Cole stayed at the casino with his colleagues and gambled for a couple of hours.

**{7}** After Cole and his Plaska colleagues returned to the hotel from the casino, Cole drove himself to Lea Regional Medical Center's (LRMC) emergency department around midnight. Cole testified at trial that his neck was so painful and weak that he had to hold it with both hands, and that he was dragging his feet on the ground as he walked due to his injury; however, at LRMC, Cole complained only of mid-back pain. Further, Cole told the emergency department staff that he had been injured lifting heavy objects and attempting to stop a 100-pound insulator from tipping over, an injury that had occurred shortly before the Bell Incident. Although Cole mentioned the Bell Incident to the emergency department staff, he denied that it resulted in any injury. A nurse and a physician in the emergency department conducted separate exams of Cole's head, neck, back, extremities, and neurological condition to determine the cause of his mid-back pain and to rule out a cervical spine or neurological injury. Cole exhibited no signs of any cervical or neurological injury nor did he complain of cervical pain at LRMC. Cole was diagnosed with a thoracic sprain and provided a prescription for pain medication. The emergency department physician ruled out the Bell Incident as a cause of Cole's visit to and complaints at LRMC. Upon discharge, Cole walked out of the emergency department to his car and drove himself back to the hotel. Cole testified that he lost bladder control in the parking lot after being discharged; however, he did not return to LRMC to report what happened.

**{8}** On January 20, 2014, Cole returned to his home in Amarillo, Texas, and was seen by his chiropractor, Dr. Brock Lovett.[2] The medical records from that visit indicated that Dr. Lovett's staff performed a doorbell test—designed to identify cervical disc herniation—on Cole, and the test was negative. The negative doorbell test indicated

---

[2]Plaintiffs assert that "the facts are undisputed that Cole went to see the chiropractor as the result of an injury that happened on the SPS location" and note that the district court omitted that "crucial, undeniable fact" from its findings of fact. This argument, which is not presented outside the "summary of relevant facts," is not supported by any citation to the record. *See Ross v. City of Las Cruces*, 2010-NMCA-015, ¶ 18, 148 N.M. 81, 229 P.3d 1253 ("Where a party fails to cite any portion of the record to support its factual allegations, the Court need not consider its argument on appeal."). Nevertheless, our review of the record demonstrates that Plaintiffs requested such a finding in their proposed findings of fact and conclusions of law, but the district court refused to make such a finding. Accordingly, the district court's refusal "is regarded on appeal as a finding against the party bearing the burden of proof on the issue at trial." *Empire W. Cos., Inc. v. Albuquerque Testing Labs., Inc.*, 1990-NMSC-096, ¶ 17, 110 N.M. 790, 800 P.2d 725.

that Cole had no cervical disc herniation when his treatment began that day. Cole then underwent spinal manipulation and decompression treatment.

{9}     On January 21, 2014, Cole returned to Dr. Lovett's office. Cole testified that when he sat on the treatment table, he felt shocks in his legs and his legs jumped so much that a nurse grabbed his ankles to hold them down. Dr. Lovett's staff proceeded with decompression treatment. Cole could not stand up after the decompression treatment, and Cole's son was called from Dr. Lovett's office to drive Cole to Baptist St. Anthony's Hospital (BSA Hospital).

{10}    Shortly after arriving at BSA Hospital, Cole lost feeling in his stomach region. After several cervical spine MRIs were taken, Dr. Jonathan Brett Gentry performed emergency surgery on Cole. Following surgery, Cole was diagnosed with quadriplegia as a result of a cervical disc herniation that compressed his spinal cord.

## II.     Procedural Background

{11}    In January 2016, Plaintiffs filed a complaint seeking damages for personal injuries and loss of consortium. Plaintiffs asserted claims of negligence, negligence per se, and strict liability. Plaintiffs filed an amended complaint in May 2016, wherein Plaintiffs removed some of the named defendants after the parties agreed they were improper, leaving only SPS and Coppinger as defendants. Plaintiffs' claims remained the same under the amended complaint.

{12}    Before trial, Defendants filed a number of motions to exclude certain evidence and to exclude experts on whom Plaintiffs intended to rely at trial. As relevant to this appeal, Defendants moved to exclude the testimony of Dr. Victor Taylor, one of Plaintiffs' designated experts. After the parties briefed the issue, the district court granted Defendants' motion and excluded Dr. Taylor's causation testimony at trial.

{13}    Beginning February 12, 2018, this matter was tried to the bench over seven days. Following trial, the parties submitted both written closing statements and proposed findings of fact and conclusions of law. The district court entered extensive findings of fact and conclusions of law, entered judgment in favor of Defendants, and dismissed Plaintiffs' complaint with prejudice. Plaintiffs appeal.

## DISCUSSION

{14}    On appeal, Plaintiffs argue that the district court (1) applied the wrong causation standard; (2) misapplied the Restatement (Second) of Torts §§ 411, 413, and 414 (1965); (3) erred by excusing SPS's duty to exercise the control it retained under its contract and common law; (4) misapplied the law governing "controlling employers"; (5) erred by not applying successive tortfeasor liability to Defendants or, alternatively, erred in excluding Plaintiffs' expert on medical causation; (6) erred by failing to consider Coppinger's liability individually and find that his negligence was a proximate cause of Plaintiffs' injuries; (7) erred in failing to award damages; (8) erred in excluding evidence

of corporate corruption; and (9) erred in limiting negligent hiring liability to injuries to third parties. In addition to responding to Plaintiffs' claims of error, Defendants argue that Plaintiffs have failed to follow New Mexico's rules of appellate procedure and failed to properly develop a number of their arguments for appellate review.

**{15}** At the outset, we remind Plaintiffs that litigants are encouraged to limit the number of issues they choose to raise on appeal in order to ensure that those presented are adequately supported by argument, authority, and factual support in the record. *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶¶ 54-55, 144 N.M. 636, 190 P.3d 1131; *see also* Rule 12-318 NMRA (identifying the requirements of appellate briefs). Failing to do so can lead this Court to decline review because "[t]his Court has no duty to review an argument that is not adequately developed[,]" *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701, nor will we "search the record for facts, arguments, and rulings in order to support generalized arguments[,]" *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Nevertheless, we do not believe it is necessary to address the sufficiency of each of the issues raised by Plaintiffs. This is because even when we assume, without deciding, that the district court erred in concluding that Defendants did not breach a duty owed to Cole, we believe that the district court did not err in concluding that Plaintiffs failed to prove that any such breach was a cause of Plaintiffs' damages. *See Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 ("Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, . . . and the breach being a proximate cause and cause in fact of the plaintiff's damages."). Accordingly, we focus our analysis on Plaintiffs' causation arguments.

## I.       The District Court Did Not Apply the Wrong Causation Standard

**{16}** The district court found[3] that "[t]he actions or inactions of . . . SPS and/or Coppinger were not *the* proximate cause of Cole's injuries." (Emphasis added.) Plaintiffs assert that we are required to set aside the entire judgment in this case because the district court used "the" proximate cause rather than "a" proximate cause. We understand Plaintiffs to argue the language used by the district court indicates that it required Plaintiffs to prove that SPS's and Coppinger's actions or inactions were the sole proximate cause of Cole's injuries. We are not persuaded.

**{17}** "The interpretation of a court order presents a question of law[,] which we review de novo." *Fed. Nat'l Mortg. Ass'n v. Chiulli*, 2018-NMCA-054, ¶ 14, 425 P.3d 739. "The same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments." *Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 8, 140 N.M. 637, 145 P.3d 117 (internal quotation marks and citation omitted). "The plain meaning of the language used is the primary

---

[3]We acknowledge that the district court listed its proximate cause decision as a conclusion of law. However, it is only when "the facts are not in dispute and the reasonable inferences from those facts are plain and consistent[ that] proximate cause becomes an issue of law." *Galvan v. City of Albuquerque*, 1973-NMCA-049, ¶ 12, 85 N.M. 42, 508 P.2d 1339. Because the operative facts were in dispute, we treat the district court's proximate cause determination as a finding of fact.

indicator of intent." *Id.* "Where the language of a judgment or decree is clear and unambiguous, it must stand and be enforced as it speaks." *Allred v. N.M. Dep't of Transp.*, 2017-NMCA-019, ¶ 41, 388 P.3d 998 (alterations, omission, internal quotation marks, and citation omitted). "However, when an order or judgment has some ambiguity or uncertainty, it may be construed in the light of the pleadings, other portions of the judgment, findings, and conclusions of law." *Fed. Nat'l Mortg. Ass'n*, 2018-NMCA-054, ¶ 14.

**{18}** Here, Plaintiffs' request that we draw inferences from the language used by the district court indicates that the language used in the judgment may not be "clear and unambiguous." *See Allred*, 2017-NMCA-019, ¶ 41. Accordingly, we will construe the language used by the district court in light of all of the findings of fact and conclusions of law that it made in its judgment. *See Fed. Nat'l Mortg. Ass'n*, 2018-NMCA-054, ¶ 14.

**{19}** We believe that the judgment, when read in its entirety, indicates that the district court considered all of the possible causes of Cole's injuries that were presented at trial when making its proximate cause determination. Those possible causes included (1) the injury Cole sustained by lifting and attempting to prevent a 100-pound insulator from falling over before the Bell Incident; (2) the Bell Incident; and (3) the chiropractic treatment provided by Dr. Lovett and his staff days after the Bell Incident. When presented with evidence of different possible causes, it was for the district court as fact-finder to determine whether one or more of the causes presented was a proximate cause of Cole's injury. Accordingly, if the district court found that there was *only one* possible proximate cause based on the evidence presented, it would be appropriate for the district court to use "*the* proximate cause" instead of "*a* proximate cause."

**{20}** The findings and conclusions support our belief that the district court eliminated the Bell Incident as one of the possible proximate causes in this case and did not erroneously believe that the Bell Incident needed to be the *only* proximate cause of the accident for liability to exist on the part of Defendants. While noting that Cole was initially stunned from the Bell Incident, the district court credited testimony that Cole continued to work for the rest of the day and then worked for the next two days, doing manual labor that required him to lift heavy objects. The district court also relied on the records from LRMC and related testimony from Dr. Loya, the LRMC emergency department physician, which established that Cole had not sought treatment at LRMC as a result of the Bell Incident. Instead, his complaints were related to a lifting injury. Dr. Loya ruled out any cervical spine or neurologic injury and diagnosed Cole with a thoracic (mid-back) strain, which was consistent with the nature of the complaints Cole presented upon arrival at LRMC. The district court then credited the testimony of Defendants' expert, Dr. Patrick McCormick, that Cole's cervical spine MRI taken before surgery on January 21, 2014, indicated that the disc herniation that caused Cole's paralysis occurred within twelve to twenty-four hours of the MRI based on the appearance of Cole's spinal cord and a lack of inflammation and edema. Based on those findings and conclusions, which have substantial support in the record, we believe the district court found that Cole did not sustain any injury as a result of the Bell Incident and instead found that whatever caused Cole's cervical disc herniation and resulting

paralysis occurred after mid-day on January 20, 2014, days after the Bell Incident. Further, there was only one possible cause presented at trial that fit within that timeframe—Cole's chiropractic treatment.[4]

**{21}** Conversely, the inference urged by Plaintiffs—that the district court required Plaintiffs to prove that SPS's and Coppinger's actions or inactions were the sole proximate cause of Cole's injuries—is not grounded in the findings and conclusions. In fact, Plaintiffs do not cite to any portion of findings or conclusions, or the record proper more generally, that supports the inference they ask this Court to make. Accordingly, we decline to adopt Plaintiffs' suggested inference.

**{22}** Based on the foregoing, we conclude that the district court did not apply the wrong causation standard in this case.

## II. The District Court Did Not Err by Failing to Impose Successive Tortfeasor Liability Against Defendants

**{23}** Plaintiffs assert that the district court "implicitly found that Dr. Lovett's chiropractic manipulation was an independent intervening cause. But the elements imputing liability to Defendants under New Mexico's successive tortfeasor law cannot be disputed." Accordingly, Plaintiffs argue that the district court "erred in refusing to impose liability on Defendants under successive tortfeasor liability theories." We are not persuaded.

**{24}** In *Payne v. Hall*, our Supreme Court provided the following explanation of successive tortfeasor liability:

> When the claim is brought against the original tortfeasor, it is up to the plaintiff to prove, and the [fact-finder] to decide, whether the plaintiff suffered a distinct original injury caused by the original tortfeasor's negligence. Causation for the *second injury* is determined as a matter of law, but if, and only if, the plaintiff satisfactorily demonstrates that the original tortfeasor negligently caused a distinct, original injury requiring medical treatment. This original injury must be distinct from the enhanced injury that occurs subsequently at the hands of the successive tortfeasor.

2006-NMSC-029, ¶ 19, 139 N.M. 659, 137 P.3d 599 (citation omitted). As we explained in the preceding section, it is clear from the findings and conclusions that the district court found that Cole did not suffer a distinct, original injury caused by any of Defendants' actions or inactions. To the extent that Plaintiffs ask us to reweigh the evidence and find differently than the district court, that is something we will not do. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (stating "we will not reweigh the evidence nor substitute our

---

[4]This observation should not be interpreted as this Court suggesting that the district court was required to, or did, find that Cole's chiropractic treatment was the only proximate cause of his injuries. The district court needed only to determine whether Defendants' actions or inactions were a proximate cause of Cole's injuries. When the district court concluded that they were not, Plaintiffs' claims necessarily failed.

judgment for that of the fact[-]finder"); *see also Skeen v. Boyles*, 2009-NMCA-080, ¶ 37, 146 N.M. 627, 213 P.3d 531 (stating that, when the district court hears conflicting evidence, "we defer to its determinations of ultimate fact, given that we lack opportunity to observe demeanor, and we cannot weigh the credibility of live witnesses"). Accordingly, we conclude that the district court did not err by failing to impose successive tortfeasor liability against Defendants.

### III. The District Court Did Not Abuse Its Discretion by Excluding Dr. Victor Taylor's Causation Testimony

**{25}** The district court excluded the testimony of Dr. Victor Taylor, one of Plaintiffs' experts, as it "relate[d] to or concern[ed] causation."[5] In doing so, the district court first found that "Dr. Victor Taylor is not qualified to render any opinion as to causation based upon his knowledge, skill, experience, technical or other specialized knowledge." The district court also found that "[t]he testimony of Dr. Victor Taylor concerning causation would not be helpful to" it. Plaintiffs argue that Dr. Taylor's testimony was wrongly excluded, challenging both of the district court's findings.[6]

**{26}** "We review the admission or exclusion of expert testimony for an abuse of discretion." *Town of Taos v. Wisdom*, 2017-NMCA-066, ¶ 24, 403 P.3d 713. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). "An abuse of discretion standard of review, however, is not tantamount to rubber-stamping the trial judge's decision." *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks and citation omitted). Further, "any doubt regarding the admissibility of expert opinion evidence should be resolved in favor of admission, rather than exclusion." *Loper v. JMAR*, 2013-NMCA-098, ¶ 18, 311 P.3d 1184 (internal quotation marks and citation omitted).

**{27}** Rule 11-702 NMRA provides that

---

[5] Plaintiffs did not call Dr. Taylor to testify at trial in any capacity. Although Plaintiffs' briefing seems to suggest that the district court granted exclusion of all of Dr. Taylor's testimony, the language of the district court's order makes it clear that exclusion was limited to Dr. Taylor's causation opinions.

[6] Plaintiffs question—in a single sentence—whether treating physicians must qualify as experts under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). However, Plaintiffs do not cite any portion of the record suggesting that the district court relied on *Daubert* when excluding Dr. Taylor's testimony. Further, Plaintiffs do not offer any argument or cite any authority that would suggest that it was improper for the district court to apply the *Daubert* requirements, to the extent that it did so, to Dr. Taylor, who was expected to give testimony that went beyond his own diagnosis and treatment of Cole and addressed external causation. *See Parkhill v. Alderman-Cave Milling & Grain Co. of N.M.*, 2010-NMCA-110, ¶ 23, 149 N.M. 140, 245 P.3d 585 (concluding "that a treating physician is not automatically qualified to testify as to the external agent that caused the patient's disease"). Accordingly, we decline to further address this. *See Corona*, 2014-NMCA-071, ¶ 28 ("This Court has no duty to review an argument that is not adequately developed."); *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Rule 11-702, therefore, "establishes three prerequisites for admission of expert testimony: (1) experts must be qualified; (2) their testimony must assist the trier of fact; and (3) their testimony must be limited to the area of scientific, technical, or other specialized knowledge in which they are qualified." *Parkhill*, 2010-NMCA-110, ¶ 11 (internal quotation marks and citation omitted). We understand the district court's findings to be directly related to the first two prerequisites for admission of expert testimony under Rule 11-702. Accordingly, because the admission of Dr. Taylor's testimony required that both prerequisites be satisfied, a conclusion that either one of the district court's findings was not an abuse of discretion would dispose of Plaintiffs' challenge to Dr. Taylor's exclusion.

**{28}** We begin our analysis with the second prerequisite, which "goes primarily to relevance." *Downey*, 2008-NMSC-061, ¶ 30 (internal quotation marks and citation omitted). "One aspect of relevance is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the [fact-finder] in resolving a factual dispute." *Id.* (internal quotation marks and citation omitted). Here, Dr. Taylor admitted in his deposition that (1) a disc can be herniated in a number of ways including lifting and carrying heavy objects, repetitive compressive loading, and acute trauma; (2) he was unaware of what kind of work Cole did on the Bopco project and, accordingly, did not know what kinds of loads that work would exert on Cole's spine; (3) he did not know about the injury Cole sustained while trying to stabilize a falling insulator; (5) he was unaware that Cole had complained of shocking sensations before the Bell Incident; (6) he had not seen all of Cole's medical records relating to Cole's preexisting conditions; and (7) he had not reviewed any eyewitness statements or deposition testimony regarding the Bell Incident before rendering his opinion. Instead, Dr. Taylor accepted Cole's version of events.

**{29}** Based on these admissions, we cannot say that the district court abused its discretion by concluding that Dr. Taylor's testimony would not be helpful. Dr. Taylor's testimony established that his causation opinions were not sufficiently tied to the facts of the case and therefore were not helpful to the fact-finder.[7] *See id.* For this reason, we conclude that the district court did not abuse its discretion when it excluded Dr. Taylor's testimony.

---

[7]We note that Dr. Taylor issued a supplementary report following his deposition. Plaintiffs used the supplementary report to argue against Defendants' motion to exclude Dr. Taylor's testimony. Defendants argued that the district court should not consider the supplementary report, contending that it was untimely. Plaintiffs do not cite any portion of the record suggesting that the district court accepted Dr. Taylor's supplementary report nor do they argue that it would have been improper for the district court to have rejected the report. Nevertheless, assuming that the district court accepted the supplementary report, we note that Plaintiffs only argue that the supplementary report was "based on sound science," not that it sufficiently addressed the factual deficits of Dr. Taylor's deposition testimony so that it would be an abuse of discretion to have excluded his causation testimony on that basis.

**CONCLUSION**

**{30}** Because Plaintiffs have failed to demonstrate error in the district court's causation determination, we need not reach Plaintiffs' other claims of error. We affirm.

**{31}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**